IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:15-CV-122-D

| | | |
|---|---|---|
| MORRIS M. HARRIS, | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ARMY REVIEW BOARD AGENCY, | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

On June 22, 2015, Morris M. Harris ("Harris" or "plaintiff"), proceeding pro se, filed a complaint in Carteret County Superior Court against the Army Review Board Agency, the Secretary of the Army, Colonel James S. Aranyi, Command Sergeant Major Marlo Cross, and First Sergeant James Milligan [D.E. 1-2]. Harris alleged that defendants improperly began administrative actions against him for being "temporar[il]y non-deployable" and that certain superior officers abused their power over him. Compl. [D.E. 1-2] 4, 26–31. Harris requested judicial review of a United States Army ("Army") separation order and "2 million dollars" in tort damages. See id. 4. On July 21, 2015, the United States, acting on behalf of the named defendants, removed the case to this court [D.E. 1]. On July 23, 2015, the United States moved to dismiss for lack of subject-matter jurisdiction and for insufficient service of process [D.E. 4] and filed a supporting memorandum [D.E. 5]. On August 5, 2015, Harris responded [D.E. 7], and on August 11, 2015, the United States replied [D.E. 13]. On October 6, 2015, the court granted defendants' motion to dismiss and allowed Harris to "file a single, coherent amended complaint" containing his claim under the Administrative Procedure Act ("APA"). See [D.E. 21].

On November 3, 2015, Harris filed an amended complaint naming the United States as the sole defendant ("United States" or "defendant") [D.E. 22].[1] In his amended complaint, Harris alleges that the Army Board for Correction of Military Records ("ABCMR") acted arbitrarily and capriciously when it failed to reinstate Harris to service in the Army, restore his rank, and award him full back pay and allowances. See id. 20–30. On December 8, 2015, the United States moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), see [D.E. 27], and filed a supporting memorandum [D.E. 28]. On December 10, 2015, Harris responded in opposition [D.E. 30] and filed a supporting memorandum [D.E. 31]. On December 18, 2015, Harris moved to amend his complaint [D.E. 34]. On January 4, 2016, the United States responded in opposition to Harris's motion to amend [D.E. 37].

As explained below, this court lacks jurisdiction over Harris's amended complaint. Accordingly, the court grants defendant's motion to dismiss. Additionally, the court denies Harris's motion to amend as futile.

I.

In 1998, Harris enlisted in the United States Army Reserve ("Army Reserve"). Am. Compl. [D.E. 22] 2. On February 21, 2001, Harris enlisted in the Army. Id. While serving on active duty in the Army, Harris received skills and technical training, was stationed in Germany, and deployed once to Iraq. Id. 2–3. On August 5, 2005, the Army honorably discharged Harris. Id. 3. Shortly thereafter, Harris rejoined the Army Reserve and, on November 6, 2006, was promoted to Staff Sergeant. Id.

---

[1] Harris labeled his amended complaint as a "motion to amend complaint." [D.E. 22] 1. This court's October 6, 2015 order instructed Harris to file a "single, coherent amended complaint." [D.E. 21]. Accordingly, the court considers Harris's motion to amend to be Harris's amended complaint.

2

In 2009, Harris was assigned to the 98th Signal Battalion. Id. Donald Ross ("Ross") provided Harris with counseling regarding Harris's job responsibilities and notified Harris that Harris would report to him. Id. In November 2009, Ross deployed to Iraq. Id. After Ross deployed, First Sergeant James S. Milligan ("First Sergeant Milligan") became Harris's supervisor. Id. 3–4. Harris claims that there was uncertainty about the precise supervisory relationship between him and First Sergeant Milligan and that First Sergeant Milligan was frequently away performing other responsibilities. Id. 4. Additionally, on at least one occasion, Harris claims to have stood in as first sergeant. Id. It is unclear whether Harris alleges that confusion regarding the chain of command led to negative consequences for Harris. See id. 5 (listing First Sergeant Milligan among the officers bringing administrative action against Harris).

On March 26, 2010, Harris reenlisted in the Army for three additional years. Id. 4. On April 4, 2010, the Army sent Harris to Fort Knox, Kentucky, to attend an Army Advance Leadership Course. Id. On April 22, 2010, the Engineer Support Battalion to which Harris was assigned convoyed for PAC Warrior Exercise. Id. Harris claims he did not report to his duty location until May 18, 2010, because he was attending the Army Advance Leadership Course. Id. It is unclear whether Harris's late arrival at his duty location led to negative consequences for Harris. See id. 5 (describing a pattern of misconduct beginning in May 2010).

In June or July 2010, the Army ordered Harris's deployment to Iraq. Id. Harris, however, claims that he was non-deployable at that time because of medical issues. Id. Because Harris did not or could not report for deployment, Colonel James S. Aranyi, First Sergeant Milligan, and Command Sergeant Major Marlo Cross "immediately started the process for adverse administrative action" against Harris, alleging a "Pattern of Misconduct from May–September 17 of 2010." Id. 5, 10. In September 2010, the Army initiated separation action through a "DA FORM 4856." Id. 10.

3

In the separation action, Harris's supervisors alleged that Harris, among other incidents of misconduct, engaged in unacceptable behavior, was insubordinate and derogatory in text messages, and threatened physical harm to senior officers. Id. 10–11.

In May 2011, Harris received a separation order from the Army. Id. 7. Harris claims that this separation order was unjustly imposed and resulted from the issues surrounding his order for deployment. See id. 19 ("The evidence supports that [Harris] was actually separated because he didn't deploy, as the actions to separate [Harris] started after Defendants learned that [Harris] was temporar[il]y non-deployable...."), 30. After his discharge, Harris "sought relief through the Army Review Board and the ABCMR." Id. 7. The ABCMR twice denied Harris's requests for relief. Id. The court will not rehash the myriad issues Harris raises concerning his separation, the Army Board, and the ABCMR. Suffice it to say, Harris believes that the original action to separate him was not fair and that the ABCMR wrongfully denied Harris's requests for relief. See id. 18–30, 35–38. Accordingly, Harris now seeks federal-court review of the ABCMR's decision under the APA. Id. 2, 4–6, 8–9, 38.

II.

The United States moves to dismiss Harris's amended complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). [D.E. 27]; see Fed. R. Civ. P. 12(b)(1). As the plaintiff, Harris bears the burden of establishing subject-matter jurisdiction. See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93–94, 104 (1998); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

The United States challenges the sufficiency of the allegations Harris advances to support subject-matter jurisdiction. See [D.E. 28] 1–2 ("[Harris's] claims . . . fail to provide a basis for subject matter jurisdiction under the APA."). Accordingly, "the trial court must apply a standard

4

patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009). Adopting and applying the Rule 12(b)(6) standards, the court evaluates the legal and factual sufficiency of the complaint. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). In considering a motion to dismiss, a court need not accept the complaint's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

The standard used to evaluate the sufficiency of the pleading is flexible, "and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano, 521 F.3d at 304 n.5 (quoting Twombly, 550 U.S. at 555); see Iqbal, 556 U.S. at 678–79; Coleman, 626 F.3d at 190; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

A.

The APA waives sovereign immunity for private parties who sue the federal government to obtain "relief other than money damages" for "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. §§ 702, 704. Thus, for this court to possess jurisdiction over

5

Harris's APA claim, Harris must plausibly allege that: (1) he seeks relief other than money damages, and (2) there is no other adequate remedy in a court. See id.; Bowen v. Massachusetts, 487 U.S. 879, 891 (1988); James v. Caldera, 159 F.3d 573, 578–79 (Fed. Cir. 1998).

Harris cannot bring his claim under the APA because he seeks money damages in his amended complaint. In making this determination, the court recognizes that Harris's amended complaint contradicts itself concerning the precise relief he requests. See Am. Compl. 5 (stating that "[Harris] does not seek monetary relief," but, in the same sentence, requesting "Federal review, reinstatement in the Army and back pay and allowances for service time lost based on [Harris's] separation from the Army"), 38 (requesting "reinstatement" in the prayer for relief). Where a complaint is unclear, a court is not bound by facial allegations in it. Rather, a court may assess a complaint as a whole to determine its "essence." Randall v. United States, 95 F.3d 339, 347 (4th Cir. 1996). Despite the two equivocal representations that Harris does not seek money damages, the amended complaint repeatedly states that Harris seeks money damages in the form of back pay and allowances. See Am. Compl. 8 ("[Harris] seeks back pay and allowances for the time lost in service . . . ."), 20 (alleging that the ABCMR wrongfully denied Harris "back pay and allowances from 6 May 2011"), 23 (same), 31 ("[Harris] seeks to pursue claims for . . . reinstatement in the Army AGR Program, restoration of SFC Rank, full back pay and allowances based on his rank . . . ."), 34 ("[Harris] is further entitled to . . . receive . . . back pay from time loss [sic] in service . . . .").

The amended complaint also makes clear the type of claim that Harris brings against the Army: a wrongful-discharge claim. See, e.g., Am. Compl. 4 (noting that, on March 26, 2010, Harris reenlisted in the Army for three more years), 6 ("[Harris] was a solider of the defendants who seek[s] to have this Federal court review the separation action . . . ."). How Harris characterizes his claim is important. "[A] case where the plaintiff brings an action to review the decision of a board . . . after

6

he has already been discharged," like this one, "is different from" other claims soldiers bring against the United States. Randall, 95 F.3d at 347. Although other claims can involve requests "primarily for equitable relief," in wrongful-discharge claims the "plaintiff has a cause of action for back pay from the date of his discharge" and any injunctive relief is "an incident of, or collateral to, a monetary award." See id. at 347–48.

The Military Pay Act, 37 U.S.C. § 204, bolsters this conclusion. The Military Pay Act is a "money-mandating statute" that "sets forth entitlements to basic pay to members of a uniformed service." Young v. United States, 497 F. App'x 53, 58 (Fed. Cir. 2012) (per curiam) (unpublished); see Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc). A plaintiff who successfully proves wrongful discharge "is entitled to money in the form of the pay that plaintiff would have received but for the unlawful discharge." Young, 497 F. App'x at 58. Thus, Harris's success on his claim for wrongful discharge would necessarily involve an award of money damages. See id.; Roth v. United States, 378 F.3d 1371, 1384 (Fed. Cir. 2004). Accordingly, the court lacks jurisdiction over Harris's amended complaint under the APA. See Bowen, 487 U.S. at 891; James, 159 F.3d at 578–79; Randall, 95 F.3d at 347–48.

B.

Next, the court analyzes whether it has jurisdiction under the Tucker Act, 28 U.S.C. §§ 1346(a), 1491. This court is "authorized to examine the case under [a] provision" other than the APA where a plaintiff's "complaint [is] sufficient to support jurisdiction" under another statute. See Randall, 95 F.3d at 345; Celli v. Shoell, 40 F.3d 324, 328 (10th Cir. 1994) ("[F]ederal jurisdiction may be sustained on the basis of a statute not relied on or alleged in the pleadings."). Particularly because "[t]he interplay between the Tucker Act and the APA is somewhat complicated," Randall, 95 F.3d at 354, and because Harris proceeds pro se, see Erickson, 551 U.S. at 94, the court addresses

7

whether it has jurisdiction under the Tucker Act.

The Tucker Act waives sovereign immunity for "any claim against the United States founded ... upon any express or implied contract with the United States ... not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act alone "does not provide a substantive cause of action absent a money-mandating statute." Young, 497 F. App'x at 57–58; see Martinez, 333 F.3d at 1303. However, the Tucker Act and the Military Pay Act together provide a cause of action for Harris's wrongful-discharge claim. See Young, 497 F. App'x at 57–58; Martinez, 333 F.3d at 1303. In back-pay cases, a court may use the Military Pay Act and the Tucker Act to "provide an entire remedy and ... complete the relief afforded by the judgment." 28 U.S.C. § 1491(a)(2). Specifically, in affording an "entire remedy," the court can "issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records." Id.

Harris requests reinstatement in the Army, restoration of his rank, and back pay and allowances. The United States Court of Federal Claims ("Court of Federal Claims") has used the Tucker Act and Military Pay Act to provide such relief. See, e.g., Mitchell v. United States, 930 F.2d 893, 896 (Fed. Cir. 1991) (collecting cases). This court, however, lacks subject-matter jurisdiction over Harris's claim under the Tucker Act because the Court of Federal Claims is the exclusive arbiter of disputes under the Tucker Act where the amount-in-controversy exceeds $10,000. 28 U.S.C. § 1346(a)(2); see United States v. Hohri, 482 U.S. 64, 66 n.1 (1987); Baker v. United States, 642 F. App'x 989, 990–91 (Fed. Cir. 2016) (per curiam) (unpublished); Randall, 95 F.3d at 347. Although Harris's amended complaint fails to specify the precise amount of money damages he seeks, see Am. Compl. 32–38, Harris's claim easily involves more than $10,000. In making this determination, the court takes judicial notice of Army pay tables, which demonstrate that back pay of even one year would amount to a sum greater than $10,000. See Def. Fin. & Account

8

Serv., Basic Pay—Effective January 1, 2010 (2010), http://www.dfas.mil/dam/jcr:cade00d2-3305-4e96-8b1e-c91b30e5647b/MilPayTable2010.pdf (noting that an E1 Army Private, the lowest possible pay scale category, earned $17,366.40 per year in 2010, when Harris's dispute began); see also Fed. R. Evid. 201; Tellabs, Inc., 551 U.S. at 322; Philips, 572 F.3d at 180.

A plaintiff pursuing a claim under the Tucker Act may "waive damages in excess of $10,000 to remain in district court." Randall, 95 F.3d at 345 n.8. A district court, however, may decline to exercise jurisdiction "where there is no indication that Plaintiff has done so." Id. As mentioned, Harris's amended complaint makes clear that he wants back pay and allowances since May 6, 2011. See Am. Compl. 8, 20, 23, 24. Accordingly, the requested back pay exceeds $10,000, and the Court of Federal Claims possesses exclusive jurisdiction over Harris's claim under the Tucker Act. Thus, this court dismisses the amended complaint for lack of subject-matter jurisdiction. See, e.g., Randall, 95 F.3d at 345 n.8.

C.

Finally, on December 18, 2015, Harris filed a motion to amend his complaint [D.E. 34]. "A party may amend its pleading once as a matter of course" within 21 days after service or, "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b)." Fed. R. Civ. P. 15(a)(1)(A)–(B). In all other cases, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Id. 15(a)(2). A court may deny leave to amend where "the amendment would be prejudicial[,] . . . there has been bad faith on the part of the moving party, or the amendment would [be] futile." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (quotation omitted).

9

In Harris's proposed amended complaint, Harris persists in his wrongful-discharge claim and seeks more than $10,000. See, e.g., [D.E. 34] 2 (requesting "full back pay and allowances"), 3 (noting that Harris requested back pay from the ABCMR), 6 ("[Harris] does not seek monetary relief but seeks . . . reinstatement in the Army and back pay and allowances for service time lost based on Morris's erroneous separation from the Army."), 7 ("[Harris] deserved relief of . . . full back pay and allowances . . . ."), 9 ("[Harris] seeks back pay and allowances for the time lost in service . . . ."), 24 (noting that Harris requested back pay from the ABCMR), 26–27 (same), 37 ("[Harris] seeks to pursue claims for injunctive, declaratory, reinstatement[,] . . . restoration of SFC Rank, full back pay and allowances . . . ."), 41 (requesting "back pay from time loss [sic] in service based on the improper separation"). Even if the court were to grant Harris's motion to amend, the court would continue to lack subject-matter jurisdiction. Thus, the court denies the motion to amend as futile. See, e.g., Laber, 438 F.3d at 426; Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986).

III.

In sum, the court GRANTS defendant's motion to dismiss for lack of subject-matter jurisdiction [D.E. 27], DISMISSES without prejudice plaintiff's amended complaint [D.E. 22], and DENIES as futile plaintiff's motion to amend [D.E. 34]. The clerk shall close the case.

SO ORDERED. This **30** day of August 2016.

JAMES C. DEVER III
Chief United States District Judge

10